IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

CAROL TODD,

        Plaintiff,

*vs*.                                                     CIVIL ACTION NO.  2:04CV40

SALLY HARDY,
WEST VIRGINIA HOUSING DEVELOPMENT FUND,
WEST VIRGINIA HOME OF YOUR OWN INITIATIVE,
NORTH CENTRAL WEST VIRGINIA COMMUNITY
      ACTION ASSOCIATION, and the
UNITED STATES DEPARTMENT OF HOUSING AND
      URBAN DEVELOPMENT,

        Defendants.

## ORDER AND OPINION/REPORT AND RECOMMENDATION

On September 22, 2005 came the Plaintiff, Carol Todd, in person but not represented by counsel and also came the Defendants: Sally Hardy, by Paul W. Gwaltney, Jr., her counsel; West Virginia Housing Development Fund by John P. Melick, its counsel; West Virginia Home Of Your Own Initiative by Michael Kozakewich, Jr., its counsel; North Central West Virginia Community Action Association by Jeffery Taylor, its counsel; and the United States Department Of Housing and Urban Development, hereinafter called "HUD", by Patrick Flatley and Betsy Jividen, Assistant United States Attorneys for the Northern District of West Virginia, its counsel for an Ominbus Hearing on: Plaintiff's Petition for Preliminary Injunction (Docket Entry 3); HUD's FRCivP 12(b) motion to dismiss filed October 22, 2004 (Docket Entry 29); Todd's motion to allow filing of an amended complaint and an amended motion for permanent and injunctive relief filed December 29, 2004 (Docket Entry 35); Todd's motion to "wave" [sic] transcript fees filed September 7, 2005 (Docket Entry 92); and Todd's emergency petition for disqualification and change of judge filed September 20, 2005 (Docket Entry 94).

## Statement of the Case

Todd purchased a house in Reedsville, West Virginia from Sally Hardy. Todd received funds from West Virginia Housing Development Fund (hereinafter referred to as the "Fund") through West Virginia Home Of Your Own Initiative (hereinafter referred to as "Home") to make the purchase. HUD makes funds available in West Virginia through Home block grants designed to create affordable housing for low income households. West Virginia disburses the funds it receives through the Fund.

Following the purchase, Todd complained that the house was not suitable for a number of reasons and started contacting Home and Fund to rectify the situation contending they had responsibility because they allowed the house to pass inspection in a defective condition before she purchased it.

Approximately two years after Todd purchased the house, Todd contacted HUD's Director of Community Planning and Development, Lynn Daniels, in Pittsburgh, Pennsylvania. Daniels negotiated an agreement, hereinafter called "memorandum of understanding" or "MOU" dated July 22, 2003 between HUD and Fund. The MOU basically provided that HUD would continue to be the primary point of contact between the Fund and Todd concerning the MOU and the property; HUD would determine that Todd was willing to deliver a Deed In Lieu Of Foreclosure and Hold Harmless Agreement to the Fund and was agreeable with the terms and provisions of the MOU. Todd and Daniels continued to communicate orally and in writing. Todd and Daniels reached an understanding that, instead of a deed of foreclosure, Todd would deed the property back to the Fund. In addition HUD would reimburse Fund the costs of Todd's loans and Todd would be released from any loan obligation related to the property. Todd also believed Daniels agreed that

2

HUD would help her obtain subsidized housing in another location including helping her obtain a new mortgage and assist in the payment of her relocation expenses and attorney fees. Discussions broke down resulting in Todd filing the within civil action seeking damages and injunctive relief. At the time of filing, Todd was represented by legal counsel.

The only allegations in Todd's complaint against HUD are as follows:

**COUNT IV**

26. After receiving no assistance or relief from the West Virginia housing authority [sic], plaintiff contacted the United States Department of Housing and Urban Development ("HUD") and was put in touch with Lynn B. Daniels, in the Pittsburgh Area Office of Community Planning and Development. Mr. Daniels negotiated a resolution of Ms. Todd's HOME Program Loan Complaint. In a conference call on July 24, 2003, with Mr. Daniels, Ms. Todd and others, Mr. Daniels presented a Memorandum of Understanding that HUD had negotiated with the WVHRDF [sic], in which the WVHDF agreed to take back the house and to satisfy all reasonable debt, and Ms. Todd would provide a deed to the house.

27. While the Memorandum of Understanding between HUD and WVHDF solved Ms. Todd's problems of living in a home that aggravated her disabilities, and having a mortgage that far exceeded the value of the home, once she signed a deed she would be homeless.

28. Ms. Todd negotiated additional terms with Mr. Daniels, including that HUD would assist her in finding a new home with mortgage subsidized by some federal or state program, assist her with obtaining that mortgage and with moving costs and attorney fees.[1]

29. More than nine months have passed, Ms. Todd has spent another worrisome winter in the home that aggravates her disabilities, with a roof that she is frightened may collapse, and with a furnace that vents back into her home. The deed she promised to the WVHDF is prepared, and she has located a area of the country where she would like to live, that would alleviate some of her health problems. She has repeatedly asked Mr. Daniels to provide her with the letters or documents she needs to obtain subsidized housing. She cannot do this on her own as the loans to the WVHDF show up on her credit report and are far in excess of her ability to pay.

Based on the foregoing allegations, Todd prayed for the following relief:

---

[1] These alleged additional terms were verbal and were not included in any MOU or amended MOU.

**PRAYER FOR RELIEF**

30. Plaintiff prays that the Court will order the Defendants to comply with the Memorandum of Understanding, to assist her with obtaining financing, and moving to a new home, to accept a deed for the home and to satisfy or release her loans. She further prays for damages for annoyance and inconvenience, mental and physical suffering, in the amount of $100,000.00 and for attorney fees and costs, and for such other and further relief as the Court may deem proper and just.

Since September 22, 2005, Jennifer McGinley has appeared as substitute counsel for Todd. On October 26, 2005, the undersigned conducted a Rule 16 telephonic conference. McGinley appeared representing Todd. In response to inquiries from the undersigned, McGinley stated that Todd had nothing to offer in response to HUD's motion to dismiss. The undersigned advised McGinley that he was ready to make a report and recommendation to the District Judge, but would not do so until after Friday, October 28, 2005, to permit McGinley additional time to provide the undersigned with any authority in opposition to the motion to dismiss. To the date of this opinion/report and recommendation, no response to HUD's motion to dismiss has been filed other than the response originally filed on January 7, 2005 by Todd's former counsel, Joan A. Mooney (Docket Entry 39).

**Discussion**

**Counsel**

At the outset of the September 22, 2005 omnibus hearing, the undersigned inquired of Todd whether she was represented by counsel. Although Todd advised the undersigned that she had been consulting with Robert Bastress, a law professor at WVU, and encouraged the undersigned to consider permitting Bastress to continue to "mediate" a possible settlement between Defendants and Todd, no representation was made by Todd that Bastress or any other attorney had then agreed to

represent her in the within civil action.

By Order dated April 7, 2005, Todd's original legal counsel, Joan A. Mooney, was permitted to withdraw from continuing representation of Todd (Docket Entry 53). Todd was aware of her counsel's motion to withdraw as early as February 4, 2005 because it was the Plaintiff, Carol Todd, who moved for her counsel to be permitted to withdraw. At approximately the same time, the action was stayed on motion of HUD, for reasons that remain under seal by order of the Court dated February 2, 2005 (Docket Entry 44). The stay and its extension expired September 15, 2005. During the more than seven (7) months that the stay was in effect, no substitute legal counsel made an appearance in behalf of Todd. As of the September 22, 2005 hearing, Todd still did not have counsel to represent her and accordingly represented herself. Nothing precluded Todd from continuing to negotiate through Bastress or another attorney or on her own with Defendants toward settlement of the within action.

**Recusal**

Todd filed her *pro se* Emergency Petition For Disqualification And Change Of Judge on September 20 2005. At the time of the September 22, 2005 hearing and subsequent thereto through the date of publication of this opinion/report and recommendation, no order of a District Judge has been entered disqualifying the undersigned from further participation in the within civil action. To the extent the motion was couched in "recusal," for the reasons stated on the record during the hearing of September 22, 2005, the undersigned **DECLINED TO RECUSE HIMSELF**. Accordingly, insofar as the motion sounds in "recusal", the same (Docket Entry 94) is **DENIED**.

**Special Hearing Time**

Todd filed a motion to schedule hearings in the within civil litigation after noon in order to

accommodate her medical and physical limitations. Without binding the District Judge, the undersigned advised Todd on the record of an earlier proceeding he would try to schedule hearings on matters in this case that were pending before him after the noon hour. By Order dated September 6, 2005, (Docket Entry 91) the undersigned granted Todd's motion (Docket Entry 90) to reschedule the Omnibus Hearing for a time after noon. The hearing commenced at 1:00 pm as scheduled.

**Motion To Amend Complaint**

Todd filed her motion to allow filing of an amended complaint and an amended motion for permanent and injunctive relief on December 29, 2004 (Docket Entry 35). The motion was not further pursued. Substituted counsel, Jennifer McGinley, did not pursue the motion at the hearing of October 26, 2005 and did not submit any amended pleading or proposed amended pleading at any time before the preparation and submission (filing) of this report and recommendation. Accordingly, Todd's motion to amend her complaint (Docket Entry 35) is **DENIED** as having been abandoned.

**HUD Motion To Dismiss**

    **Contentions Of HUD**

HUD contends Plaintiff's allegations against it should be dismissed in accord with F.R.Civ.P 12(b)(1) and 12(b)(6):

1)     For lack of subject matter jurisdiction due to:

    A)     Plaintiff's failure to establish waiver of sovereign immunity;

    B)     Lack of jurisdiction under the Tucker Act;

    C)     Failure to exhaust administrative remedies; and

    D)     Failure to designate a proper party defendant.

and

2) because the complaint fails to state a claim upon which relief can be granted because:

    A) HUD cannot be estopped by alleged unauthorized actions of its Officials

**Contentions of Plaintiff**

Todd was given an additional opportunity to file an out of time memorandum stating her opposition to HUD's motion to dismiss. Any such memorandum was to be filed by Todd on or before October 28, 2005. No such memorandum was filed. The only documents the undersigned received from Todd were: Todd's original attorney's response filed January 7, 2005 (Docket Entry 39) and a letter from Todd acting *pro se* dated September 26, 2005 with copies of letters and e-mail correspondence attached. Generally speaking, Todd, at that time asserted additional mediation through the assistance of Robert Bastress, Attorney at Law and Professor at the WVU College of Law may result in a settlement and that the undersigned should permit that process to go on. Implicitly and expressly Todd contended that deciding the motion to dismiss would eliminate any incentive HUD had to mediate a settlement. As previously stated, new counsel, McGinley, filed nothing in opposition to HUD's motion between the time she appeared and the date of this report and recommendation.

As a threshold matter, F.R.Civ.P. 8(a) requires: "A pleading which sets forth a claim for relief, whether an original claim, counterclaim, cross-claim, or third-party claim, shall contain (1) ***a short and plain statement of the grounds upon which the court's jurisdiction depends***, unless the court already has jurisdiction and the claim needs no new grounds of jurisdiction to support it, (2) a short and plain statement of the claim showing that the pleader is entitled to relief, and (3) a demand for judgment for the relief the pleader seeks. Relief in the alternative or of several different types may be demanded." (emphasis added by the undersigned).

No where in Todd's complaint is there a statement of the grounds upon which the Court's jurisdiction depends. In short, Todd never states what jurisdiction the Court has to hear her case. This failure not only violates the rule, but made the undersigned's mission more difficult. The failure to assert a basis for federal court jurisdiction coupled with the failure to file a meaningful response to HUD's motion to dismiss, made the undersign's mission near impossible without the undersigned making certain assumptions.

Todd's response (Docket Entry 39) to HUD's motion to dismiss states in pertinent parts:

**1.      Plaintiff has established that the United States is an indispensable party.**

> Ms. Carol Todd admits that she has not filed an administrative claim under the Federal Torts Claim Act, nor an action in the Federal Court of Claims and cannot claim estoppel against the government in this instance. Her claims are mostly against the West Virginia Housing Development Fund, The West Virginia Home of Your Own Initiative, and other state actors. ... Because the United States Department of Housing and Urban Development, through Lynn Daniels and others, prepared the Memorandum of Understanding in an effort to resolve Ms. Todd's housing complaint, and because they are a signatory to that Memorandum and Ms. Todd is not, it is necessary that it remain a party to allow Ms. Todd full relief on her complaints. ... Such complete relief could not be obtained in the United States Court of Federal Claims, as the other parties to the Memorandum of Understanding and to this lawsuit cannot be brought as parties in that Court. The United States District Court is the only available forum for complete relief for Ms. Todd.

It is with the foregoing as a backdrop that the undersigned approaches the grounds for dismissal asserted by HUD.

**1.      Sovereign Immunity**

The United States is a sovereign power and as such is immune from suit unless it consents to being sued. <u>United States v. Thompson</u>, 98 U.S. 486, 25 L. Ed. 194 (1878); <u>United State v. Lee</u>, 106 U.S. 196, 1 S.Ct. 240, 27 L. Ed. 171 (1882); <u>Kansas v. United States</u>, 204 U.S. 331, 27 S.Ct.

8

388, 51 L.Ed.510 ( 1907); Minnesota v. United States, 305 U.S. 382, 387, 59 S.Ct. 292, 294, 83 L.Ed. 235 (1939); Keifer & Keifer v. Reconstruction Finance Corporation, 306 U.S. 381, 388, 59 S.Ct. 516, 517 83 L. Ed. 784 (1939); and United States v. Shaw, 309 U.S. 495, 60 S. Ct. 659, 84 L.Ed..888 (1940); United States v. Mitchell, 436 U.S. 206, 212 (1983).

A court's jurisdiction over a suit against the United States is defined by the consent of the sovereign. Minnesota v. United States, *supra* at 388. It does not matter that the suit is against a department of the United States or one of its employees in his or her official capacity. It is still a suit against the United States. FDIC v. Meyer, 510 U.S. 471, 475 (1994).

Sovereign immunity applies generally to any suit against the United States including one such as Todd's where contractual and extra contractual damages are joined with claims for equitable relief. Malone v. Bowdoin, 369 U.S. 643, 648 (1962); Jaffee v. United States, 592 F.2d 712, 717 n.10 (3rd Cir. 1979).

"Sovereign Immunity of the United States may only be waived by federal statute." Presidential Garden Associates v. United States of America on behalf of the Secretary of Housing and Urban Development, 175 F.3d 132 (2nd Cir. 1999). The text of the statute must be strictly construed and it must unequivocally express consent to be sued. United States v. Sherwood, 312 U.S. 584, 586 (1941).

> "A waiver of the Federal Government's sovereign immunity must be unequivocally expressed in statutory text. Moreover, a waiver of the Government's sovereign immunity will be strictly construed, in terms of its scope, in favor of the sovereign. To sustain a claim that the Government is liable for awards of monetary damages, the waiver of sovereign immunity must extend unambiguously to such monetary claims. A statute's legislative history cannot supply a waiver that does not appear clearly in any statutory text; the unequivocal expression of elimination of sovereign immunity that we insist upon is and expression in the statutory text." Lane v. Pena, 518 U.S. 187 (1996).

9

A careful review of the complaint/petition filed by Todd and of her first counsel's January 7, 2005 memorandum reveals that Todd did not carry her burden of alleging a statutory waiver of sovereign immunity as a basis for jurisdiction in the District Court for the Northern District of West Virginia. United States v. Testan, 424 U.S. 392, 399 (1976). Todd does not challenge that HUD is an agency of the United States and as such enjoys sovereign immunity.

### 2. Sue and Be Sued Clause

42 U.S.C.A. §1401(a) (1994) provides in pertinent part: "[t]he Secretary of Housing and Urban Development may sue and be sued only with respect to its functions under the United States Housing Act of 1937, as amended." 12 U.S.C.A. §1701 provides in pertinent part: "The Secretary shall, in carrying out the provisions of this subchapter and subchapters II, III, V, VI, VII, VIII, IX-B, and X of this chapter, be authorized, in his official capacity, to sue and be sued in any court of competent jurisdiction, State or Federal."

The threshold question is: Do these provisions constitute a grant of jurisdiction in the federal district court or are they merely waivers of sovereign immunity? Originally, the Fourth Circuit in the case of Ferguson v. Union National Bank of Clarksburg, 126 F.2d 753, 756-757 (1942) held: "that the 'sue and be sued' language of §1702 was an affirmative grant of jurisdiction and that the jurisdiction of the District Courts to hear suits against federal agencies was not limited by the Tucker Act." Ames - Ennis, inc. v. Midlothian Limited Partnership et al, 469 F.Supp. 939 (DMD 1979). According to the District Judge in Ames - Ennis, the Court of Appeals in Ferguson reasoned that Congress could not have intended the language "to sue and be sued in any court of competent jurisdiction, State or Federal" to mean that the claim could be pursued in any State Court of general jurisdiction but, when it came to a Federal Court, the same claim would be limited to

10

being brought in the Court of Claims.

Relying on developments in the law of other circuits, the District Judge in Ames - Ennis, *id.* at 942, broke rank from the Fourth Circuit and held 12 U.S.C.A. 1702 "is not an affirmative grant of jurisdiction" but is merely a waiver of sovereign immunity.

Neither Ferguson, *supra*, nor Ames - Ennis, *supra*, discussed the sue and be sued language contained in 42 U.S.C.A. §1401(a). The language of 42 U.S.C.A. §1401(a) is significantly different from the language of 12 U.S.C.A. §1702 in that the language: "in any court of competent jurisdiction, State or Federal" is conspicuously absent in §1401(a). The absence of this language further weakens the reasoning for applying the holding in Ferguson, *supra*, to 42 U.S.C.A. §1401(a). Neither Ferguson or Ames - Ennis have been distinguished or reversed or overruled by subsequent decisions within the Fourth Circuit. Therefore, the undersigned urges the District Court to follow the logic of Ames - Ennis and hold in the Todd case that the "sue and be sued" language does not constitute a grant of jurisdiction in the District Court but instead is a limited waiver of sovereign immunity forcing application of the limited remedies and jurisdiction applicable under the Big Tucker Act, the Little Tucker Act, and the Federal Tort Claims Act.

Even if the District Judge so declines to follow the foregoing recommendation, the naming of HUD as defendant does not make Todd's suit any less of an action against the United States. It is the nature of the relief sought which governs whether a suit is against an agency or the United States. "[A]ny judgment for the plaintiff must be recoverable from funds in the possession and control of the Secretary that are severed from Treasury funds and Treasury control" in order to avoid the bar created by sovereign immunity. Indus. Indem., Inc. v. Landrieu, 615 F.2d 644, 646 (5th Cir. 1980). For example, Fryar v. Kemp, 774 F. Supp. 1033, 1035 (W.D.La. 1991) held that a plaintiff

11

who had leased apartment buildings to a public housing authority which received section 8 subsidy payments from HUD through annual contributions via the U.S. Housing Act had no jurisdiction to bring the suit in the District Court because any adverse judgment would be paid out of the public treasury.

Neither party to this action has asserted the right to sue and be sued issue. It would have been of help to the undersigned had they done so. It would have prevented the undersigned from having to speculate on whether the Plaintiff could avoid the bar of sovereign immunity through application of the "sue and be sued" language of one or another of the statutory enactments. But, as previously demonstrated and stated, Plaintiff asserted no basis for jurisdiction in her complaint. Instead she claimed she suffered mentally and physically and that she suffered annoyance and inconvenience for which she seeks damages in the sum of $100,000.00. If the suit were to go forward and Todd recovered, the judgment may have to be paid out of the public treasury and not out of funds in the possession and control of the Secretary. Under that scenario, the sue and be sued exception to sovereign immunity is not available to Todd. Instead her claims fall within the purview of the Big Tucker Act or the Federal Tort Claims Act and cannot be maintained in this Court for the reasons set forth in the following sections of this report and recommendation. Fryar v. Kemp, *id.*

### C. The Little Tucker Act

There is no relief for Todd under "The Little Tucker Act." The Little Tucker Act provides a waiver of sovereign immunity and concurrent jurisdiction in district courts and the U.S. Court of Federal Claims if: 1) it is a claim against the United States; 2) the claim does not exceed $10,000.00; 3) and the claim is "founded either upon the Constitution, or any Act of Congress, or any regulation of an executive department, or upon any express or implied contract with the United States, for

liquidated or unliquidated damages not sounding in tort. ..." 28 U.S.C.A. §1346(a).

In the instant case, Todd cannot meet prongs 2 and 3 of the statutory test. Todd's claims exceed the $10,000.00 limit and sound in both contract and tort.

### D. The Big Tucker Act

28 U.S.C.A.§1491 gives the United States Court of Federal Claims exclusive jurisdiction over claims against the United States that exceed $10,000.00 and are founded upon an express or implied contract with the United States. Unlike the Little Tucker act, claims falling under the Big Tucker Act are exclusively within the jurisdiction of the Court of Federal Claims. There is no jurisdiction in the District Court. Amoco Productions Co. v. Hodel, 815 F.2d 352, 359 (5th Cir. 1987), *cert. denied,* 487 U.S. 1234 (1988). Even if Todd were seeking specific performance of a contract she had with HUD[2], she is barred from doing so in the District Court. Sovereign immunity precludes actions for specific performance against the United States in District Courts. Larson v. Domestic & Foreign Commerce Corp., 337 U.S. 682 (1949) and B.K. Instrument v. United States, 715 F.2d 713, 728 (2nd Cir. 1983).

### E. Federal Tort Claims Act

To the extent Todd makes claims against the United States or its agency or officials of that agency that sound in tort, those claims are governed by the Federal Tort Claims Act (FTCA). 28 U.S.C.A. § 1346. The provisions of the FTCA are strictly construed in favor of the United States

---

[2]Todd asserts she is a third party beneficiary of the MOU between HUD and Fund. She also asserts the MOU was negotiated with Fund by HUD acting in her behalf. She asserts during her arguments that 1) she should be able to step into the shoes of HUD to enforce the MOU; 2) HUD is an essential party to the action; and 3) HUD should be required to enforce the MOU and in addition, help her find a new place to live with a HUD supported loan and contribute to her moving expenses and attorney fees.

since the Act creates a limited waiver of sovereign immunity. Thigpen v. United States, 800 F.2d 393 (4th Cir. 1986).

Todd's complaint seeks compensatory damages and attorneys' fees for "false disclosures in the sale of realestate; for predatory lending; for revocation of the purchase of a home and for release from her mortgage and liens." These are claims which may have been recovered had Todd been suing a fellow West Virginia citizen and therefore they may be[3] cognizable claims under the FTCA.

> In order to file an FTCA claim against the United States, 28 U.S.C.A. § 2675(a) requires: An action shall not be instituted upon a claim against the United States for money damages for injury or loss of property or personal injury or death caused by the negligent or wrongful act or omission of any employee of the government while acting within the scope of his office or employment, unless the claimant shall have first presented the claim to the appropriate Federal agency and his claim shall have been finally denied by the agency ... The failure of an agency to make final disposition of a claim within six months after it is filed shall, at the option of the claimant any time thereafter, be deemed a final denial of the claim....

Todd does not allege she filed an administrative claim with HUD and thereafter exhausted her administrative remedies. To the contrary, in argument, Todd by counsel admits this was not done which admission of counsel is supported by the uncontroverted Declaration of Thomas Rodick attached to Defendant HUD's memorandum as Exhibit A.

Accordingly, Todd is precluded from pursuing this action insofar as it sounds in tort because she has not exhausted her administrative remedies. McNeil v. United States, 508 U.S. 106, 113 (1993).

---

[3]While the undersigned does not specifically address HUD's 12(b)(6) ground for dismissal, the undersigned's review of Todd's complaint does not find a viable contract or tort claim stated therein against HUD. Accordingly, HUD could as easily be dismissed from the within action because no claim has been stated against it.

## Conclusions

Based upon all of the above, the undersigned finds and concludes:

1) HUD is an agency of the United States, thereby making the United States the real party in interest.

2) Todd's claims against the United States are barred by the doctrine of sovereign immunity.

3) Insofar as Todd's claims sound in contract, they may be cognizable under the Big Tucker Act, and because they exceed $10,000.00 are not properly before this Court but may be properly brought in the Federal Court of Claims.

4) Insofar as Todd's claims sound in tort, they may be cognizable under the FTCA; however, Todd has failed to exhaust her administrative remedies under the Act.

As a result of the foregoing conclusions, the undersigned deems it unnecessary to address HUD's remaining contentions that Todd failed to designate the proper party defendant or failed to state a claim upon which relief could be granted.

## Recommendation

For the reasons set forth herein, it is **RECOMMENDED** that Defendant HUD's Motion To Dismiss be **GRANTED.**

Any party may, within ten (10) days after being served with a copy of this Report and Recommendation, file with the Clerk of the Court written objections identifying the portions of the Report and Recommendation to which objection is made, and the basis for such objection. A copy of such objections should also be submitted to the Honorable Robert Goodwin, United States District Judge. Failure to timely file objections to the Report and Recommendation set forth above will result in waiver of the right to appeal from a judgment of this Court based upon such report and

recommendation. 28 U.S.C. § 636(b)(1); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984), cert. denied, 467 U.S. 1208 (1984); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); Thomas v. Arn, 474 U.S. 140 (1985).

The District Clerk for the United States District Court for the Northern District of West Virginia is directed to provide a copy of this order to all counsel of record and any litigants who are proceeding *pro se*.

DATED: November 2, 2005

/s *John S. Kaull*
JOHN S. KAULL
UNITED STATES MAGISTRATE JUDGE